USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHICKPEN, S.A.,

Plaintiff,

-against-

BOLIVARIAN REPUBLIC OF VENEZUELA,

Defendant.

21 Civ. 597 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On June 13, 2022, the Court entered a default judgment against Defendant, the Bolivarian Republic of Venezuela ("Venezuela"), in favor of Plaintiff, Chickpen, S.A. ("Chickpen"), in connection with Venezuela's failure to pay the principal amount and interest on bonds and notes of which Plaintiff is a beneficial owner. *See generally* Default Judgment, ECF No. 46; Default Judgment Op., ECF No. 44; *see also* Compl., ECF No. 1. On May 23, 2025, Chickpen filed a supplemental complaint, seeking to recover the missed interest and payments that have accrued on the bonds and notes since June 13, 2022. *See* Supp. Compl., ECF No. 51. Venezuela moves to dismiss Chickpen's supplemental complaint under Rule 12(b)(6) for failure to state a claim. *See* Mot., ECF No. 61; Mem., ECF No. 62; *see also* Opp., ECF No. 65; Reply, ECF No. 66. For the reasons stated below, the motion is GRANTED.

## BACKGROUND[1]

Chickpen is the beneficial owner of two dollar-denominated debt securities: (1) global bonds issued in 1998 and due in 2018 (the "Global Bonds"), and (2) global notes issued in 2001 and due in 2018 (the "Global Notes"). *See* Supp. Compl. ¶¶ 1–2, 6.

[1] The Court accepts all well-pleaded facts as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Both the Global Bonds and the Global Notes were issued pursuant to fiscal agency agreements. *Id.* ¶¶ 2, 6. Among other things, the agreements provide that Venezuela waives its sovereign immunity with respect to claims arising out of the Global Bonds and Global Notes, consents to be sued in the United States District Court for the Southern District of New York, and agrees that New York law will govern the agreements, the Global Bonds, and the Global Notes, as relevant here. *Id.* ¶¶ 13–14, 16–17.

On June 13, 2022, the Court found Venezuela liable for failing to pay Chickpen the principal and interest due on the Global Bonds and Global Notes through that date. *See generally* Default Judgment Op. Judgment was entered against Venezuela as follows. For Venezuela's breach of the Global Bonds, Chickpen is entitled to recover: $1,285,000.00 for unpaid principal; $843,308.02 for accrued and unpaid contractual interest on principal through June 9, 2022; $229,535.90 in statutory prejudgment interest on unpaid contractual interest at a rate of 9% per annum accruing from the day after each missed interest payment through June 9, 2022; attorney's fees and costs in the amount of $49,132.59; and post-judgment interest as set forth in 28 U.S.C. § 1961. *See* Default Judgment at 1. For Venezuela's breach of the Global Notes, Chickpen is entitled to recover: $11,599,000.00 for unpaid principal; $4,077,692.89 for accrued and unpaid contractual interest on the principal through June 9, 2022; $906,555,93 in statutory prejudgment interest on unpaid contractual interest at a rate of 9% per annum accruing from the day after each missed interest payment through June 9, 2022; and post-judgment interest as set forth in 28 U.S.C. § 1961. *See id.* at 2.

Since the Court entered judgment, Chickpen alleges that Venezuela has missed additional interest payments on the Global Bonds and Global Notes. Supp. Compl. ¶ 25. The Global Bonds obligate Venezuela to make semi-annual interest payments, due on February 15

and August 15 each year, on the principal in arrears at an annual rate of 13.625% until the principal is fully repaid. *See* Suppl. Compl. ¶ 26. From June 13, 2022, through at least February 15, 2025, Venezuela has not made contractual interest payments on the Global Bonds. *Id.* ¶ 26. The Global Notes obligate Venezuela to make semi-annual interest payments, due on December 1 and June 1 of each year, on the principal in arrears at an annual rate of 7.00% until the principal is fully repaid. *Id.* ¶ 32. From June 13, 2022, through at least December 1, 2024, Venezuela has not made contractual interest payments on the Global Notes. *Id.* ¶ 34.

Both the Global Bonds and the Global Notes also contain *pari passu* provisions requiring Venezuela external public obligations to "rank *pari passu* and without any preference among themselves" and to be paid "equally and ratably" with all other present and future payment obligations. *See* ECF No. 38-9 at S-3 (Global Bonds); ECF No. 38-11 at 11 (Global Notes). In litigation brought by other holders of Venezuelan sovereign bonds, Venezuela stipulated to the entry of three supplemental judgments awarding semi-annual interest payments post-judgment on various debt instruments, including the same debt securities held by Chickpen. *See* Opp. at 5–6 (citing *Contrarian Capital Mgmt., LLC v. Bolivarian Republic of Venezuela* ("*Contrarian*"), No. 19 Civ. 11018 (AT) (S.D.N.Y.) at ECF Nos. 119, 126, 177). Most recently, in February 2026, Venezuela entered a Fourth Stipulated Judgment that stated that contractual interest does not accrue on matured debt securities that have been reduced to a judgment and credited Venezuela for post-judgment interest payments awarded as part of a prior stipulated judgment. *See Contrarian*, ECF No. 208 at 4.[2]

[2] The Court denies Chickpen's letter motion to strike Venezuela's notice of supplemental authority alerting the Court to this development because the Court does not agree that the notice amounted to an unauthorized sur-reply. *See* ECF No. 68. Regardless, the supplemental notice is immaterial to the Court's analysis, and Chickpen suffered no prejudice, as it submitted a response, *see* ECF No. 68.

## DISCUSSION

I. Legal Standard

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. When adjudicating a motion to dismiss under Rule 12(b)(6), the Court must draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II. Analysis

Chickpen's claim for post-judgment semi-annual interest payments is contrary to well-established New York law, and the *pari passu* provisions of the fiscal agreements do not justify a different outcome in this case.

A. Post-Judgment Interest Payments

"New York courts have long held that when an agreement involving an indebtedness 'provides that the interest shall be at a specified rate until the principal shall be paid, then the contract rate governs until payment of the principal, *or until the contract is merged in a judgment*.'" *NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 258 (2011) (emphasis

modified) (quoting *O'Brien v. Young*, 95 N.Y. 428, 430 (1884)); *accord Stull v. Joseph Feld, Inc.*, 309 N.Y.S.2d 985, 987 (S. Ct. App. Div. 1970); *NYCTL 1998-2 Tr. v. Wagner*, 876 N.Y.S.2d 522, 522 (S. Ct. App. Div. 2009). Chickpen's argument that "the plain language" of the fiscal agency agreements obligates Venezuela to make post-judgment semi-annual interest payments, therefore, lacks merit under settled New York law. Opp. at 9.

Chickpen contends otherwise by pointing to caselaw holding that "[i]n installment contracts, . . . a separate and distinct cause of action arises on each installment as it falls due, and . . . a judgment on one installment is not a bar to an action on a later installment." *Pomeranz v. More*, 63 N.Y.S.2d 111, 115–16 (N.Y. Mun. Ct. 1946). This is true but irrelevant. Chickpen sues for interest payments following the entry of judgment on the principal, not merely on prior installments of interest. *See* Default Judgment at 1.

Chickpen's reliance on *Ajdler v. Province of Mendoza*, 33 N.Y.3d 120 (2019), is similarly misplaced. In *Ajdler*, the Second Circuit certified two questions to the New York Court of Appeals: (1) whether enforceable claims for semi-annual interest payments "continue to accrue after a claim for the principal of the bonds is time-barred," and (2) if yes, whether "interest claims [can] arise *ad infinitum*" or "limiting principles" applied to prevent such an outcome. *Id.* at 123 & n.1. Chickpen argues that "the framing of the second question indicates that the Second Circuit does not interpret" the longstanding principle that contractual interest ceases at judgment to "foreclos[e] a creditor's ability to pursue continuous claims for missed [interest] installments as long as the principal remains unpaid." Opp. at 11. However, *Ajdler* expressly addresses situations in which "a claim for the principal . . . is time-barred," such that the principal cannot be merged in a judgment. *Ajdler*, 33 N.Y.3d at 123. The Second Circuit's

certification of this question, therefore, cannot be read to cast doubt on established law regarding post-judgment interest.

Chickpen argues that this result is inequitable because "the diligent creditor who promptly enforces its legal rights is penalized, while the creditor who delays legal action (but sues within the statute of limitation[s]) is rewarded with additional years of post-maturity semi-annual installments." Opp. at 12. First, these considerations are equally applicable to non-installment contracts for which Chickpen acknowledges contractual interest ceases at judgment, *see id.* at 11, so they do not compel a different outcome here. Second, although the "diligent creditor" may be entitled to lower interest on the judgment than it was on the unpaid principal, it gains corresponding benefits: it can enforce the debtor's obligation sooner and, in some cases, thereby obtain a superior claim to property that could satisfy the judgment. *See, e.g.*, *Clarkson Co. v. Shaheen*, 716 F.2d 126, 129–30 (2d Cir. 1983) (holding that, because the district court had already taken custody of a debtor's property to satisfy a creditor's judgment, no subsequent levy by other judgment creditors against the debtor's interests in that property could give priority over the first judgment creditor's claim). Third, Chickpen's solution to the supposed unfairness would itself improperly grant Chickpen a double recovery by awarding it both post-judgment statutory interest and post-judgment contractual interest. Chickpen resists this conclusion by arguing that post-judgment contractual interest installments "arise independently each time a coupon date passes without payment," rather than "run[ning] on the [j]udgment," but—as the Court has already concluded—there is no independent obligation to pay contractual interest under New York law after the entry of judgment on the principal. Opp. at 13.[3]

[3] Because the Court concludes that New York contract law controls whether Venezuela owed post-judgment semi-annual interest payments under the fiscal agreements, it does not consider Venezuela's argument that the *res judicata* doctrine also precludes Chickpen's claims. *See* Mem. at 11–12.

B. *Pari Passu* Provisions

Chickpen also contends that, notwithstanding that New York law does not require Venezuela to make post-judgment contractual interest payments, the Court must "recognize Chickpen's entitlement to post-judgment [interest] installments" because of *pari passu* provisions in the fiscal agreements. Opp. at 15. These provisions require Venezuela's external public debts "to 'rank *pari passu* and without any preference among themselves,' and to be paid equally and ratably' with all other present and future [public debts]." *Id.* at 14 (quoting ECF No. 38-9 at S-3; ECF No. 38-11 at 11). Based on these provisions and Venezuela's entry into stipulated judgments awarding missed post-judgment interest payments, Chickpen argues that it is entitled to post-judgment installments. *See id.* at 14–15.

This argument fails because the *pari passu* provisions do not constitute "clear, unambiguous and unequivocal language" that Chickpen may recover contractual interest payments post-judgment, as required to overcome the "general rule" that creditors may not do so. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004).[4]

In the alternative, Chickpen "requests leave to amend to assert claims against Venezuela for breach of the *pari passu* provisions." Opp. at 15. The Court notes that Chickpen's allegation that Venezuela entered settlement agreements awarding post-judgment interest, despite contesting Chickpen's right to such interest in this litigation, charges Venezuela with "mere selectivity in payment among . . . bondholders." *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 415 (2d Cir. 2020). That conduct alone "is not enough to give rise to a *pari passu*

[4] Chickpen argues that *Westinghouse* does not apply because it "is not seeking to apply the contractual rates to the outstanding [j]udgment [but rather to] enforce separate, post-judgment breach-of-contract claims arising from Venezuela's missed installments that accrued after entry of the judgment." *See* Opp. at 13–14. Because the Court has already held that Chickpen has no "separate, post-judgment breach-of-contract claims" for missed interest payments after judgment on the principal, this argument is unavailing.

violation." *Id.*; *see also NML Cap., Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2d Cir. 2013) (holding that a sovereign debtor does not breach *pari passu* provisions "every time it pays one creditor and not another"). The Court nonetheless grants Chickpen leave to amend given this Circuit's strong preference for permitting parties to amend their allegations following a court's first ruling. *See, e.g.*, *New York Communities for Change v. New York State Unified Ct. Sys./Off. of Ct. Admin.*, 680 F. Supp. 3d 407, 415 (S.D.N.Y. 2023).

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss the supplemental complaint is GRANTED. Should Chickpen seek to amend its complaint to assert Defendant's breach of the *pari passu* provisions, it shall do so by **October 19, 2026**. If no amended supplemental complaint is filed, this order shall operate as a dismissal with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 61.

SO ORDERED.

Dated: September 21, 2026
New York, New York

ANALISA TORRES
United States District Judge